UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.: 1:26-cv-03555-RMR-SBP

NICHOLAS GREEN, JAMES "SCOTT" DOUGLAS, and JOSEPH GOAD on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VAIL RESORTS, INC.; ALTERRA MOUNTAIN COMPANY; BOYNE USA, INC. d/b/a BOYNE RESORTS; POWDR CORP.; RRC ASSOCIATES, INC.; and NATIONAL SKI AREAS ASSOCIATION,

Defendants.

---

**DEFENDANT NATIONAL SKI AREAS ASSOCIATION'S MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. NSAA'S ALLEGED CONDUCT IS INDISTINGUISHABLE FROM ORDINARY TRADE ASSOCIATION ACTIVITY .......... 1

II. NOTHING ELSE SUGGESTS NSAA JOINED THE ALLEGED CONSPIRACY .......... 3

A. NSAA's Reports Do Not Suggest It Joined a Conspiracy .......... 3

B. Petitioning the Forest Service Is Immune Under *Noerr-Pennington* .......... 5

CONCLUSION .......... 5

## TABLE OF AUTHORITIES

**CASES** **PAGE NUMBER**

*Brown v. JBS USA Food Co.*,
No. 22-cv-02946-PAB-STV, 2023 WL 6292717
(D. Colo. Sept. 27, 2023) .......... 2

*GF Gaming Corp. v. City of Black Hawk*,
405 F.3d 876 (10th Cir. 2005) .......... 5

*Homie Technology, Inc. v. National Ass'n of Realtors*,
186 F.4th 763 (10th Cir. 2026) .......... 1, 3, 4

*Jones v. Micron Technology, Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) .......... 3

*Kissing Camels Surgery Center, LLC v. Centura Health Corp.*,
No. 12-cv-3012-WJM-BNB, 2014 WL 560462
(D. Colo. Feb. 13, 2014) .......... 2, 3, 4, 5

*Llacua v. Western Range Ass'n*,
930 F.3d 1161 (10th Cir. 2019) .......... 1, 2

*In re Local TV Advertising Antitrust Litigation*, No. 18 C 6785, 2022 WL
3716202 (N.D. Ill. Aug. 29, 2022) .......... 4

*Maple Flooring Manufacturers' Ass'n v. United States*,
268 U.S. 563 (1925) .......... 4

**STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(6) .......... 1

## INTRODUCTION

Plaintiffs' claims against the National Ski Areas Association ("NSAA") should be dismissed under Fed. R. Civ. Pro. 12(b)(6) because plaintiffs do not allege facts plausibly suggesting NSAA joined the purported conspiracy. Plaintiffs do not allege NSAA set prices, sold lift tickets, or adopted any rule regulating members' pricing. Instead, plaintiffs sue NSAA for publishing industry statistics, hosting conferences, and lobbying government. (Compl. ¶¶ 38–39, 96.) These allegations cannot plausibly show a trade association joined a conspiracy—if they did, every "trade association [would be] a walking conspiracy." *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1178 (10th Cir. 2019).

Plaintiffs' other theories also do not plausibly suggest NSAA joined the purported conspiracy under controlling Tenth Circuit precedent.

**First,** plaintiffs cannot hold NSAA liable on the theory that RRC Associates or Resort Defendants misused NSAA's reports. The Tenth Circuit rejects liability "based solely on facilitation" because it "fails to distinguish between agreed-upon use and . . . individual abuse." *Homie Tech., Inc. v. Nat'l Ass'n of Realtors*, 186 F.4th 763, 773 (10th Cir. 2026). Plaintiffs allege no facts showing that NSAA agreed to any purported misuse.

**Second**, NSAA's request that the U.S. Forest Service stop disclosing resort permit fees (Compl. ¶ 130) is First Amendment petitioning activity immune from antitrust laws.

## ARGUMENT

### I. NSAA'S ALLEGED CONDUCT IS INDISTINGUISHABLE FROM ORDINARY TRADE ASSOCIATION ACTIVITY

Plaintiffs do not plausibly allege that NSAA joined the alleged conspiracy because they allege only that NSAA engaged in routine trade association activities. A plaintiff must

"plausibly allege evidence indicating [each defendant] was committed to the common scheme." *Brown v. JBS USA Food Co.*, 2023 WL 6292717, at *10 (D. Colo. Sept. 27, 2023). Because "a trade association is not . . . a walking conspiracy," the plaintiff must allege that it took actions beyond typical associational activities, such as adopting anticompetitive rules or "enforcement mechanisms" governing member conduct. *Llacua*, 930 F.3d at 1178, 1180. Moreover, "a trade association does not become a conspirator merely because a conspiracy was formed at meetings it hosted." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2014 WL 560462, at *6 (D. Colo. Feb. 13, 2014).

In *Llacua*, for example, shepherds sued ranchers and their trade associations for wage-fixing. *Llacua*, 930 F.3d at 1168. The associations provided members wage information, told them when to "immediately adjust wage[s]," *id.* at 1173, and the rancher defendants "participated in [association] governance." *Id.* at 1181. These allegations fell short because plaintiffs pointed to no "plainly anticompetitive association rules compelling [member] behavior." *Id.* at 1178. The court explained that providing an "opportunity to communicate" fails to suggest a conspiracy because it is "no different from the argument [that] trade associations are inherently anticompetitive." *Id*. at 1175.

Under controlling guidance from *Llacua*, plaintiffs fail to state an antitrust claim against NSAA because they allege only that it engaged in routine association activity.

<u>Governance is insufficient</u>. Resort Defendants allegedly serve on NSAA's board (Compl. ¶¶ 97, 99), but *Llacua* held that purported conspirators' "participat[ion] in [association] governance" does not plausibly allege the association joined the supposed conspiracy. *Llacua*, 930 F.3d at 1181.

Gathering data is insufficient. NSAA allegedly gathered "aggregate average figures." (Compl. ¶¶ 111.) But "[d]ata-gathering" is a "perfectly legitimate objective[] of trade associations." *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 918 (N.D. Cal. 2019); *Llacua*, 930 F.3d at 1172-73 & n.20 (providing wage information insufficient).

Hosting industry meetings does not suggest a conspiracy. NSAA hosts industry conferences (Compl. ¶¶ 98, 189–95) and plaintiffs cite panels where executives spoke about "the rising price of day tickets." (*Id.* ¶¶ 191–92, 195.) But merely hosting "trade association meetings . . . does not . . . imply that [NSAA] itself was a member of the [alleged] conspiracy." *Kissing Camels*, 2014 WL 560462, at *6.

## II. NOTHING ELSE SUGGESTS NSAA JOINED THE ALLEGED CONSPIRACY

Plaintiffs' complaint floats two other theories—industry reports and NSAA's governmental advocacy—but neither suggests that NSAA joined the alleged conspiracy.

### A. NSAA's Reports Do Not Suggest It Joined a Conspiracy

NSAA's reports do not plausibly suggest NSAA joined the purported conspiracy. Plaintiffs say that Resort Defendants' conspiracy was "facilitated" by NSAA's reports (Compl. ¶¶ 5, 154), and that RRC used NSAA's reports in consulting for Resort Defendants. (*Id.* ¶¶ 6, 145–50.) These allegations fall short for two reasons. First, the Tenth Circuit has rejected plaintiffs' facilitation theory when, as here, plaintiffs fail to allege the association agreed to—and knew of—any misuse of its reports. *See Homie*, 186 F.4th at 773. *Homie* affirmed dismissal because the plaintiff failed to allege facts plausibly suggesting a trade association knowingly facilitated a purported conspiracy. *Id.* at 772. As the court explained, "impos[ing] antitrust liability based on any facilitation could punish

associations . . . for independent actions that they never agreed to." *Id.* at 773. The Tenth Circuit ruled that association activity done "for a benign purpose might be abused or misused to achieve an anticompetitive purpose; but liability based solely on facilitation fails to distinguish between agreed-upon use and unendorsed, individual abuse." *Id.*

Like *Homie*, plaintiffs fail to allege that NSAA provided reports to facilitate collusion. Instead, plaintiffs allege that NSAA compiles "aggregated data set[s]" about past ski seasons (Compl. ¶ 114), and even instructs that resort-specific data "will not be released in any way by NSAA." (*Id.* ¶ 133.) While plaintiffs speculate RRC could have facilitated collusion through "private" consulting, plaintiffs never allege that NSAA knew how RRC allegedly used survey data, much less agreed to it. *See Kissing Camels*, 2014 WL 560462, at *6 ("Plaintiffs . . . suggest that CASCA provided passive facilitation of the conspiracy, not that it agreed to participate."). Instead, plaintiffs hypothesize about "individual abuse"—the same allegations *Homie* rejected. 186 F.4th at 773.

Second, plaintiffs fail to allege that NSAA's reports enabled Resort Defendants to communicate with each other. To plead that a trade association served as the hub of a hub-and-spoke agreement, the complaint must allege that the association "facilitated [the alleged] conspiracy" by "circulat[ing] . . . information" that "enabled co-conspirators to tacitly communicate with one another." *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *4-6 (N.D. Ill. Aug. 29, 2022); *see also Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 584 (1925) ("[T]rade associations [do not] become conspirators merely because they . . . disseminate information.").

The complaint here flunks that test because it "lacks any well-pled allegation that

[NSAA] secretly served to channel Defendant . . . A's [non-public] data to Defendant . . . B." *Loc. TV*, 2022 WL 3716202, at *7. Nor could the reports serve that function because plaintiffs admit that they provide only anonymous "aggregate statistics and trends." (Compl. ¶ 108.) And plaintiffs further admit that NSAA instructed that resort-specific data "will not be released in any way by NSAA." (*Id.* ¶ 115.)

### B. Petitioning the Forest Service Is Immune Under *Noerr-Pennington*

Plaintiffs also fault NSAA for asking the Forest Service to stop publishing individual resorts' land use fees, but that advocacy is immune under the *Noerr-Pennington* doctrine. "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 884 (10th Cir. 2005). The Tenth Circuit affirmed dismissal where the plaintiff brought antitrust claims against a trade association for lobbying, *see id.* at 879-80, holding that "[e]ven if defendants' sole motive for petitioning . . . was to injure competition, the conduct would still be protected." *Id.*; *accord Kissing Camels*, 2014 WL 560462, at *7-8.

Here, NSAA's alleged petitioning is protected under *Noerr-Pennington*. Plaintiffs allege that in 2017 NSAA "pushed for a consistent nationwide policy to prevent disclosure of individual land use fees," and that the Forest Service "acquiesced." (Compl. ¶ 130.) But that is "nothing more than lobbying of government officials, which is immune from Sherman Act liability under . . . *Noerr–Pennington*." *GF Gaming*, 405 F.3d at 884.

## CONCLUSION

For these reasons and the reasons in defendants' joint motion, NSAA respectfully asks that the Court grant its motion and dismiss the complaint with prejudice.

October 23, 2026

Respectfully submitted,

*/s/ Karen M. Lent*

Karen M. Lent
Boris Bershteyn
Sam Auld
Madeleine W. Gramigna
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
karen.lent@skadden.com
boris.bershteyn@skadden.com
sam.auld@skadden.com
madeleine.gramigna@skadden.com

***Counsel for Defendant National Ski Areas Association***

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

ccormier@burnscharest.com
jmartin@zellelaw.com
anoshari@burnscharest.com
dsims@zellelaw.com
ibaize@burnscharest.com
jhackett@zellelaw.com
lsadler@burnscharest.com
nwolfenstein@zellelaw.com
snelson@zellelaw.com
stalbot@robinskaplan.com
sslaughter@robinskaplan.com
wburns@burnscharest.com
ejalkut@robinskaplan.com
scott.lent@arnoldporter.com
matthew.tabas@arnoldporter.com
reeves.anderson@arnoldporter.com
cmartin@willkie.com
reilly@wtotrial.com
krobson@willkie.com
kumor@wtotrial.com
mbasil@willkie.com
mbaker@wtotrial.com
krantz@wtotrial.com
akrosenbluth@hollandhart.com
murphya@millerjohnson.com
cmjackson@hollandhart.com
turnerj@millerjohnson.com
adamwolfson@quinnemanuel.com
brantleypepperman@quinnemanuel.com
kevinteruya@quinnemanuel.com
ben.levin@stinson.com
nicci.warr@stinson.com
simone.stover@stinson.com

*/s/ Karen M. Lent*
Karen M. Lent