**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:26-cv-03555-RMR-SBP

NICHOLAS GREEN,
JAMES "SCOTT" DOUGLAS, and
JOSEPH GOAD, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VAIL RESORTS, INC.,
ALTERRA MOUNTAIN COMPANY,
BOYNE USA, INC. d/b/a BOYNE RESORTS,
POWDR CORP.,
RRC ASSOCIATES, INC., and
NATIONAL SKI AREAS ASSOCIATION,

Defendants.

---

**RRC ASSOCIATES, INC.'S INDIVIDUAL MOTION TO DISMISS**

---

Defendant RRC Associates, Inc. ("RRC"), in accordance with Fed. R. Civ. P. 12 and this Court's Order, Dkt. 68, respectfully moves for dismissal on an individual basis. The Court should dismiss the entire case for the reasons set forth in the Omnibus Motion to Dismiss. The Court should dismiss RRC for the additional reasons set forth below.

## INTRODUCTION

RRC occupies a unique position in this case. It neither sells lift tickets (like the Resort Defendants) nor functions as a trade association for the Resort Defendants (like NSAA). Rather, it counts NSAA and some Resort Defendants as clients for whom it provides market research. *See* Compl. ¶¶ 100-108. Although a small part of that analysis involves collecting and sharing information about price trends in the ski industry, Plaintiffs' pleadings establish only that RRC has acted as a typical market research firm providing typical market research services to clients in the normal course of business. RRC's alleged actions—which involve collecting various market data, analyzing and reformatting that data, and then presenting it to a public audience—cannot implicate it in a price-fixing conspiracy. What is more, allegations that RRC shared a list of its own clients do not support its participation in a conspiracy. And finally, the pleadings establish that RRC was completely uninvolved in the Aspenware Commerce platform. For these reasons, as well as all those stated in the Omnibus Motion to Dismiss, the claims against RRC should be dismissed for failure to state a claim.

### A. The allegations regarding RRC's purported information-sharing activity do not establish an antitrust violation.

Plaintiffs attempt to paint the work of a market research firm as approaching an automatic violation of the antitrust laws when that work is shared among competitors. Long-settled precedent rebuts this simplistic view. For a century, the Supreme Court has

recognized that those "which openly and fairly gather and disseminate information as to the cost of their product, the volume of production, [and] the actual price which the product has brought in past transactions . . . do not thereby engage in unlawful restraint of commerce." *Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 586 (1925). The Court has since reaffirmed that "the dissemination of price information is not itself a per se violation of the Sherman Act," *United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 113 (1975), and that "[t]he exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978). The concern, rather, lies with "[e]xchanges of current price information," which carry "the greatest potential for generating anticompetitive effects." *Id.* Plaintiffs allege nothing of the kind against RRC. The reports Plaintiffs cite compile historical, aggregated statistics—organized nationally, by region, and by ski area size—that are released months after the underlying data is collected. *See* Compl. ¶¶ 111, 136.

Here, Plaintiffs' allegations that RRC served as the "hub" in a "hub-and-spoke" price-fixing conspiracy by sharing aggregated, public, and historic data must be analyzed in the context of the industry and in light of the fact that current lift ticket and season ticket prices, ski lesson prices, and ski equipment rental prices charged by the Resort Defendants are publicly available to anyone (including competitors) in the marketplace through a variety of means, including on Resort Defendants' own websites.[1] As courts

[1] Plaintiffs concede that the price of Destination Ski Packages can be determined through publicly available data. Compl. ¶ 11 ("Publicly available data demonstrates that the prices of Resort Defendants' Destination Ski Packages, including annual multi-mountain season

have noted, "in the antitrust context, allegations of conspiracy often arise from parallel conduct among business competitors 'that could just as well be [lawful] independent action.'" *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Therefore, to state a plausible Section 1 claim, plaintiffs must include additional factual allegations that place that parallel conduct in a context suggesting a preceding agreement. *DRAM*, 28 F.4th at 47. The fact that current pricing information on the individual products and services that make up the "Destination Ski Package" Plaintiffs created for this litigation is publicly available means that Plaintiffs must plead ***facts*** showing that any purported parallel pricing conduct (even assuming *arguendo* they had adequately pleaded such conduct) was the result of an agreement among the Resort Defendants and not lawful, oligopolistic behavior based on monitoring each other's public prices. *See, e.g.*, *Twombly*, 550 U.S. at 556 ("lawful parallel conduct fails to bespeak unlawful agreement"); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993) ("Tacit collusion, sometimes called oligopolistic price coordination or conscious parallelism, describes [a] process, not in itself unlawful . . . ."); *Kleen Prods.*

---

passes and daily lift tickets, have increased substantially[.]"). In addition, the Court can take judicial notice of the fact that prices are posted on publicly available websites. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (taking judicial notice of information on Northrop Grumman's website and noting "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *see* https://www.epicpass.com/passes/epic-pass.aspx (Epic Pass price); https://www.ikonpass.com/ (Ikon Pass price); https://buy.coppercolorado.com/l/season-passes/season-passes-2/p/copper-passes (Copper Mountain (PPWDR owned) season pass); https://www.boynemountain.com/season-passes (Boyne season passes). Due to space constraints, RRC does not list every relevant webpage of the Resort Defendants, but simply navigating the Resort Defendants' websites reveals that current prices for daily lift tickets, rentals, lessons, and in some instances, lodging, are all posted publicly as well.

*LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 819 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) ("The kind of interdependent conduct just described is variously known as conscious parallelism, tacit collusion, follow-the-leader strategy, or interdependent parallelism. However it is referred to, the crucial thing is that such conduct is lawful."). Plaintiffs have come nowhere close to meeting that standard. *See* Omnibus Motion at 7-11. Moreover, RRC's specific alleged role as a "hub" in a price fixing conspiracy—by collecting and sharing aggregated, public, and historic data through the Kottke report and providing consulting services to some of the Resort Defendants—is simply not plausible in light of the fact that current pricing information is publicly available to anyone (with no restrictions) online.

**B. Allegations that RRC publishes a list of its clients do not support the finding of an antitrust conspiracy.**

Plaintiffs also ask the Court to infer a conspiracy from the fact that RRC, like many professional services firms, tells prospective customers who its customers are. Compl. ¶¶ 151-52. Plaintiffs conclude that RRC did so "to monitor and police Resort Defendants' continued participation" in an alleged conspiracy. *Id.* ¶ 153; *see also id.* ¶ 207.

RRC's publication of a client list is not conduct that suggests a conspiracy because there is an "obvious alternative explanation." *Twombly*, 550 U.S. at 567. Market research firms routinely identify their clients to demonstrate experience and attract new business. Plaintiffs' allegations confirm that RRC markets its "custom data" and "strategic insights," touts its ability to "dive[] deep into the industry niche of every client," and boasts that "[m]ost of [its] clients come back over and over." Compl. ¶ 100. This is garden-variety marketing language, not a tacit admission of participation in an anticompetitive conspiracy. A firm that competes for business based on its industry experience has every

reason to tell the world who has hired it. It is part of a "rational and competitive business strategy," *Twombly*, 550 U.S. at 554, not evidence of a secret agreement among RRC's clients. *See Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *6 (D. Nev. May 8, 2024) ("Gibson II").

**C. RRC had no involvement with the Aspenware Commerce platform.**

The use of group pleadings throughout Plaintiffs' Complaint implies that RRC was involved in the Aspenware Commerce platform. *See, e.g.*, Compl. ¶ 8. But Plaintiffs do not actually allege that RRC was involved in the creation, marketing, or use of that platform (and it was not). If the Court decides that Plaintiffs have adequately pleaded a claim based on their allegations regarding the Aspenware Commerce platform, that should not bear on whether a claim has been adequately pleaded against RRC.

**CONCLUSION**

Plaintiffs' claims against RRC should be dismissed for failure to state a claim.

Respectfully submitted this 23rd day of October, 2026.

**STINSON LLP**

*By: /s/ J. Nicci Warr*
J. Nicci Warr
Benjamin Levin
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Phone: 314.863.0800
nicci.warr@stinson.com
ben.levin@stinson.com

Simone T. Stover
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Phone: 303.376.8417
simone.stover@stinson.com

**Attorneys for Defendant RRC Associates, Inc.**

**CERTIFICATE OF SERVICE AND CONFERRAL**

The undersigned certifies that on October 23, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure. The undersigned additionally certifies that on October 21, 2026, counsel for RRC contacted Plaintiffs' counsel to notify them of this Motion and its contents and invited the opportunity to confer regarding the Motion. Plaintiffs confirmed that they oppose the motion.

*s/ J. Nicci Warr*
J. Nicci Warr